417 P.2d 131

**APEX LUMBER COMPANY, Plaintiff and Appellant,**

v.

**COMANCHE CONSTRUCTION COMPANY, Raymond Clark and Moroni Feed Company, Defendants and Respondents.**

No. 10414.

Supreme Court of Utah.

July 26, 1966.

L. H. Griffiths, Murray, for appellant.

Don V. Tibbs, Manit, for respondents.

HENRIOD, Chief Justice:

Appeal from a judgment for defendants based on a jury verdict of no cause of action in a suit under Title 14–2–1 and 2, Utah Code Annotated 1953, having to do with rights of those furnishing material and for labor, where he to whom it or they were furnished failed to require a contractor's bond for payment thereof. Affirmed, with costs to defendants.

Comanche, an eastern outfit that installed "pole" type turkey enclosures, got 13 Utah farmers to let it build them these rural housing projects. It obtained its materials from Apex, a local supplier,—who proved more substantial, but less discerning than Comanche. The latter company resorted to bankruptcy when it couldn't pay off, leaving an obligation owing to Apex, who now seeks to have some of the farmers pay off because they forgot or neglected or didn't know of their obligation to require Comanche to get a bond under 14–2–1, 2, U.C.A.

There is substantial evidence to the effect that Comanche distributed materials it ordered from Apex, without accounting as to what material was delivered, where and in what quantities or quality to the 13 jobs, in its own or borrowed trucks. This was an apparent cost plus loss basis. At near completion of the projects, in an atmosphere of confused accounting practices, payments to Apex by Comanche resulted in a rather obfuscated allocation by Apex of such funds to jobs in a not too well explained bookkeeping procedure, upon which evidence the jury concluded that the defend-

ant farmers had paid off to somebody every cent due, and were square with the world,—except for troublesome 14–2–1, 2 by the terms of which they were non-conformists.[1]

Apex's accountant, Rasmussen, had on two occasions of the 13 jobs, signed lien waivers for two of the farmers upon their amounts due. It was admitted by a responsible official that these two waivers were authorized. However, when the farmers contacted the same company accountant to determine if payment to Comanche was okeh, and was assured that it was, the latter's bankruptcy apparently raised in the mind of Apex the lack of authority of this employee's authority to sign any lien waivers or represent that the farmers safely could pay their final obligation for their pole-type turkey homes. It is significant that Apex never negated Rasmussen's authority to accept money and give lien waivers with respect to 2 of the 13 jobs, and, after belatedly questioning his authority, never offered to renounce his authority and return the money paid by the two farmers.

The two antithetical positions taken by Apex are not consonant with fundamental principles of equity or the plain hinterland homage paid to the commonplace philosophy that one cannot have his cake and eat it.

Apex urges that 1) the evidence shows Apex supplied material for which it was not wholly paid. Apex is right, but this is not controlling, since such an argument would insure it against any non-payment which it itself helped to produce, as was the case here. Further it says 2) that under the statute it has a cause of action for the unpaid value of the material. Equally this is true, unless it was particeps in creating a defense for its opponents, as was the case here. Further, it urges 3) that the jury was in error in saying when Apex demanded and received from Comanche, two promissory notes for the balance, it was in payment. The jury believed that under the circumstances it *was* payment,—and it appears that the jury sensed the possibility or probability that Apex very well could have discounted and negotiated the notes had it desired, in which event it could not have denied payment. In addition, 4) Apex says there was no estoppel in accepting the notes in payment. The jury obviously disbelieved the testimony of appellant which was to the effect that the notes were not accepted as payment, and as obviously believed that Apex, demanding the notes, had in mind suing on them, praying for interest, costs and attorneys fees if not paid, or in negotiating them,—except for Comanche's bankruptcy. We think that from the record a good case can be made for an estoppel

---

1. This statute can stand a re-evaluation, since it puts the onus of obtaining the contractor's bond on the unsuspecting and unknowledgeable householder who seldom knows of its existence,—in favor of the prime supplier, who generally knows all about it, but relies on it in sober silence.

by payment, but think any lengthy recital of the evidence anent thereto would serve no useful purpose.

McDONOUGH and CALLISTER, JJ., concur.

CROCKETT, J., concurs in the result.

WADE, J., heard the arguments, but died before the opinion was filed.